*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* ARNOLD, Minors.

UNPUBLISHED
June 23, 2022

No. 358268
Wayne Circuit Court
Family Division
LC No. 2019-001578-NA

Before: MARKEY, P.J., and SHAPIRO and PATEL, JJ.

PER CURIAM.

Respondent appeals by right the trial court's orders terminating her parental rights to the minor children pursuant to MCL 712A.19b(3)(c)(*i*) (conditions that led to adjudication continue to exist), (c)(*ii*) (failure to rectify other conditions), and (j) (child is reasonably likely to be harmed if returned to the parent's home). For the reasons stated in this opinion, we affirm.

## I. BACKGROUND

On August 27, 2019, the Department of Health and Human Services (DHHS) petitioned the trial court to remove three young minor children from respondent's care. Earlier that month, Children's Protective Services (CPS) received a complaint alleging physical abuse against respondent's eldest child, JSA, who presented with respondent at the Children's Hospital of Michigan with a cut on her forehead that required sutures. Respondent provided inconsistent explanations for how the cut occurred, and when JSA was interviewed regarding the injury, she would look to respondent. The children were also dirty and smelled very bad. In a subsequent conversation, respondent informed CPS worker Marquita Washington that she did not have independent housing, was living home to home, and was recently fired from her job. The next day, Washington conducted a wellbeing check at the home where respondent was then staying and observed deplorable conditions. Washington also found the two younger children without adult supervision and in urine-soaked diapers and clothes. In addition, there were concerns that respondent had a substance abuse issue because she was alleged to be "nodding off" in the hospital and Washington observed drug paraphernalia in the home she visited.

On the date scheduled for the bench trial, the trial court agreed to allow respondent to plea no contest to the petition because she was seeking to avoid criminal and civil liability related to the alleged physical abuse. Respondent's counsel stipulated that the court could rely on the

-1-

Children's Hospital medical records pertaining to JSA as the factual basis for the plea. The court proceeded to the dispositional phase, where respondent was ordered to comply with the case service plan, including supportive visitation, a substance abuse assessment, individual counseling, parenting classes and once weekly drug screens. Respondent was also ordered to obtain and maintain a legal source of income and suitable housing, and maintain regular contact with the caseworker.

The substance abuse assessment was completed in February 2020 and the recommendation included outpatient substance abuse counseling and random drug screens. Respondent was referred to and participated in therapy with a substance abuse component. Respondent's psychological evaluation indicated "severe cannabis abuse."

A petition was filed regarding respondent's fourth child born in May 2020, alleging that the child tested positive for marijuana at birth and that respondent had admitted to using marijuana during the pregnancy. Respondent was also not compliant with the existing case service plan. The trial court assumed jurisdiction over this child after respondent did not appear for the scheduled bench trial.

In March 2021, a supplemental petition was filed seeking termination of respondent's parental rights as to all four children. The petition summarized respondent's lack of compliance with, and failure to benefit from, the case service plans.

Respondent was not present for the one-day termination hearing held in July 2021. The caseworker, Tiesha Gibson, testified that respondent had not obtained suitable housing, and although she claimed to have recently obtained employment, she had not produced verification of income. Respondent was also not consistently attending her supervised parenting visits; she attended about 55 percent of the 80 or 90 offered visits. Respondent completed 14 of the 89 offered drug screens; counting missed screens as positive results, respondent had 82 positive tests. She tested positive for marijuana only. Gibson explained that respondent participated in therapy "for a long time" but was terminated for a lack of progress. Respondent had not completed parenting classes despite multiple referrals. She participated in supportive visitation but was terminated for lack of attendance.

The trial court found clear and convincing evidence to terminate respondent's parental rights under MCL 712A.19b(3)(c)(*i*), (c)(*ii*) and (j). The court also found by a preponderance of the evidence that termination was in each child's best interests, noting that "it speaks volumes when parents don't visit their children."

## II. ANALYSIS

### A. NO-CONTEST PLEA

Respondent first argues that the trial court did not establish a factual basis for her no-contest plea. We conclude that respondent has not shown a plain error affecting substantial rights in the plea-taking process.[1]

"A respondent may make a plea of admission or of no contest to the original allegations in the petition." MCR 3.971(A). A trial court must establish the accuracy of the plea in accordance with MCR 3.971(D)(2), which provides:

> The court shall not accept a plea of admission or of no contest without establishing support for a finding that one or more of the statutory grounds alleged in the petition are true, preferably by questioning the respondent unless the offer is to plead no contest. *If the plea is no contest, the court shall not question the respondent, but, by some other means, shall obtain support for a finding that one or more of the statutory grounds alleged in the petition are true.* The court shall state why a plea of no contest is appropriate. [Emphasis added.]

As noted, the trial court relied on JSA's medical records as the factual basis for the plea. It is therefore clear that those records served as the "some other means" supporting the trial court's finding that there were statutory grounds to exercise jurisdiction over the children under MCL 712A.2(b) for a substantial risk of harm to mental wellbeing, MCL 712A.2(b)(1), and an unfit home environment, by reason of neglect, cruelty, drunkenness, criminality, or depravity on the part of a parent, MCL 712A.2(b)(2).

Respondent does not contend that the trial court erred by relying on the medical records as the factual basis for her no-contest plea. Rather, she argues that the trial court was required to identify the specific factual information in the medical records that supported the statutory grounds for jurisdiction. Essentially, respondent argues that the trial court skipped a step in the plea-taking process by not making findings from the medical records establishing that the alleged statutory grounds were true.

MCR 3.971(D)(2) requires only that the trial court "establish support" for a finding that one or more of the statutory grounds alleged in the petition are true. By relying on the medical records as the factual basis for the plea, the trial court implicitly determined that the records supported the statutory grounds for jurisdiction. This seemingly satisfied MCR 3.971(D)(2), and respondent has not identified any caselaw that required the trial court to state on the record the specific information in the medical records supporting the jurisdictional findings. In any event, in order to obtain relief under plain-error review, respondent must show that she was prejudiced by the alleged error, see *In re Pederson*, 331 Mich App 445, 463; 951 NW2d 704 (2020), which in this case would require a showing that the medical records did not support the trial court's

---

[1] Respondent failed to preserve this issue by raising it before the trial court. See *In re Utrera*, 281 Mich App 1, 8; 761 NW2d 253 (2008). Unpreserved issues are reviewed for plain error affecting substantial rights. *Id.* "An error has affected a party's substantial rights when there is a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings." *In re Pederson*, 331 Mich App 445, 463; 951 NW2d 704 (2020) (quotation marks and citation omitted).

jurisdictional findings. But respondent does not make such an argument and therefore fails to establish prejudice from any alleged defect in the plea-taking process.[2] Accordingly, she has not shown plain error affecting her substantial rights.

## B. REASONABLE EFFORTS

Next, respondent argues that DHHS did not make reasonable efforts to reunify the family. We disagree.[3]

"Absent aggravating circumstances, the DHHS has an affirmative duty to make reasonable efforts to reunify a family before seeking termination of parental rights." *In re Simonetta*, ___ Mich App ___, ___; ___ NW2d ___ (2022) (Docket No. 357909); slip op at 3 (quotation marks and citation omitted). "As part of these reasonable efforts, the Department must create a service plan outlining the steps that both it and the parent will take to rectify the issues that led to court involvement and to achieve reunification." *In re Hicks/Brown*, 500 Mich 79, 85-86; 893 NW2d 637 (2017). "[T]here exists a commensurate responsibility on the part of respondents to participate in the services that are offered." *In re Frey*, 297 Mich App 242, 248; 824 NW2d 569 (2012). "This means a respondent-parent must both participate in services and demonstrate that they sufficiently benefited from the services provided." *In re Atchley*, ___ Mich App ___, ___; ___ NW2d ___ (2022) (Docket Nos. 358502, 358503); slip op at 3 (quotation marks and citation omitted).

Respondent contends that inadequate services were offered to her relating to substance abuse, mental health, housing and employment. Regarding substance abuse, respondent was ordered to complete a substance abuse assessment and follow the recommendations of that assessment. She was also ordered to complete weekly drug screens. Per the recommendations of the substance abuse assessment, respondent was referred to and participated in therapy with a substance abuse component, but the caseworker testified at the termination hearing that respondent did not benefit from this counseling and was eventually terminated from her first therapist for a lack of progress. Respondent participated in only a fraction of her drug screens and tested positive for marijuana for most of the screens she completed.

Respondent argues that residential or inpatient treatment should have been explored as potential treatment options for her substance abuse issues. It is difficult to conclude, however, that additional services should have been explored when respondent was not meaningfully participating

---

[2] Further, had the case proceeded to the bench trial, the trial court would have also considered the testimony of CPS worker Washington regarding respondent's homelessness, unemployment, and the wellbeing check. This would have been sufficient evidence for the trial court to assume jurisdiction over the children.

[3] Generally, we review for clear error a trial court's finding that DHHS made reasonable efforts to reunify the family. See *In re Fried*, 266 Mich App 535, 542-543; 702 NW2d 192 (2005). Respondent failed to preserve this issue by not objecting to the adequacy of the services being provided. See *In re Atchley*, ___ Mich App ___, ___; ___ NW2d ___ (2022) (Docket Nos. 358502, 358503); slip op at 5.

in the services that were offered. Respondent's therapist reported that respondent "is not engaging or opening up," and that she is "very defensive" during sessions and "will hang up or end the calls if they begin to dig into the history." Considering this lack of engagement and respondent's failure to consistently participate in drug screens, there is no basis in the record to conclude that respondent would have benefitted from more intensive inpatient services. See *In re Sanborn*, ___ Mich App ___, ___; ___ NW2d ___ (2021) (Docket No. 354916); slip op at 4 ("When challenging the services offered, a respondent must establish he or she would have fared better if other services had been offered.").

Respondent further argues that services should have been offered to help her benefit more from the therapy she received. Respondent does not explain what additional services would have assisted her participation in therapy. She saw her first therapist "for a long time" with no progress before being referred to a different therapist, so arguably a second referral should have been made sooner. But there is no indication that respondent's lack of engagement was attributable to an issue with the first therapist. Indeed, respondent was terminated from services with the second therapist for nonattendance.

Respondent also argues that additional services should have been offered to help her obtain employment and suitable housing. Gibson testified that she and respondent's parent-partner provided respondent with "housing resources" and that respondent reporting being "on a waiting list." Respondent would later purchase a home that Gibson found unsuitable for living after a visit. Gibson testified at the termination hearing that she looked for assistance to help respondent fix up the home, but respondent decided that she "didn't want the home anymore" and was going to look for a new one. As for employment, there was testimony that respondent was referred to "Michigan Works." Respondent reported several times that she had obtained employment, but she failed to provide verification of income to the caseworkers.

Based on the record before us, it cannot be said that DHHS's efforts to help respondent obtain housing and employment were unreasonable. Respondent was directed to an employment agency and the record indicates that she was unable to maintain employment despite being hired for several jobs. Although she claimed to have obtained employment shortly before the termination hearing, she did not provide the caseworker verification of income. Respondent does not explain what additional services would have helped her maintain employment or obtain it sooner. Housing resources were also provided to respondent and efforts were made to help her fix up the home she bought, but then she abandoned that plan. Again, it is unclear what additional efforts should have been made.

Respondent was also offered services to improve her parenting abilities. She was referred about six times for parenting classes but failed to complete them. She also received two referrals for supportive visitation but was terminated from that service as well. Respondent does not argue that she should have received more services for parenting education, but instead asserts that "not once was a report admitted or discussed" as to how the supportive visitation was progressing. The record does not support this contention. An updated court report admitted at the March 2021 review hearing provides a summary of respondent's recent parenting visits, including those with the supportive coach.

In sum, DHHS offered services to respondent to address her numerous barriers to reunification, and she failed to meaningfully participate and benefit from the services offered. Accordingly, the trial court did not clearly err by finding that reasonable efforts were made.

Although respondent does not challenge the trial court's finding that there was clear and convincing evidence to terminate her parental rights under multiple statutory grounds, her "contention that reasonable services were not offered ultimately relates to the issue of sufficiency" of the evidence for termination of her parental rights. *In re Fried*, 266 Mich App 535, 541; 702 NW2d 192 (2005). However, we see no clear error in the trial court's finding that termination was proper under MCL 712A.19b(3)(c)(*i*), which allows for termination of parental rights if (1) more than 182 days have elapsed since the issuance of the initial dispositional order, (2) "[t]he conditions that led to the adjudication continue to exist," and (3) "there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age." MCL 712A.19b(3)(c)(*i*).

At the time of the July 2021 termination, almost two years had elapsed since the initial dispositional order entered in September 2019. Further, more than 182 days had elapsed since the July 2020 order of disposition pertaining to the fourth child. The conditions leading to the adjudications were allegations of physical abuse, neglect, homelessness, lack of income, and substance abuse issues.[4] For the reasons discussed, respondent did not rectify these conditions. Moreover, the trial court did not err by concluding that there was no reasonable likelihood that respondent would address these conditions within a reasonable time considering the ages of the minor children. Respondent had made little progress on the case service plan in almost two years. Further, she did not appear for several court hearings, including the termination hearing. Although she maintained contact with the caseworker and participated in some services, she did not adequately benefit from the services.

Because only one statutory ground is necessary to terminate parental rights, we decline to address whether termination was appropriate under MCL 712A.19b(3)(c)(*ii*) and (j). See *In re Ellis*, 294 Mich App 30, 32; 817 NW2d 111 (2011).

## C. BEST INTERESTS

---

[4] Respondent does not dispute that her substance abuse issues related to marijuana supported the statutory grounds for termination. Nonetheless, we note that respondent did not have a medical marijuana card and there was evidence that her use of marijuana was interfering with her ability to parent. Specifically, Gibson testified that respondent was under the apparent influence of marijuana at some parenting visits and when this occurred she "did nothing with the children." Further, respondent's psychological evaluation indicated severe cannabis abuse. Cf. *In re Richardson*, 329 Mich App 232, 253; 961 NW2d 499 (2019) (holding that the trial court erred by terminating the respondent-mother's parental rights under MCL 712A.19b(3)(g) when there was no evidence "demonstrating that mother's use of medical marijuana interfered with her parenting.").

Lastly, respondent argues that the trial court clearly erred by deciding that termination of her parental rights was in the children's best interests. Again, we disagree.[5]

"If the court finds that there are grounds for termination of parental rights and that termination of parental rights is in the child's best interests, the court shall order termination of parental rights and order that additional efforts for reunification of the child with the parent not be made." MCL 712A.19b(5). The petitioner must prove by a preponderance of the evidence that termination of parental rights is in the child's best interests. *In re Moss*, 301 Mich App 76, 90; 836 NW2d 182 (2013). In determining the child's best interests, "the court should consider a wide variety of factors that may include the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *In re White*, 303 Mich App 701, 713; 846 NW2d 61 (2014 (quotation marks and citations omitted). Other relevant factors include "a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption." *Id*. at 714.

Respondent suggests that the trial court erred by failing to consider that most of the parenting visits reportedly went "fine." Respondent is correct that there were review hearings where the caseworker did not report any concerns regarding her supervised parenting visits. There was also testimony, however, that respondent had difficulties managing all four children during the visits. And Gibson believed that respondent appeared to be under the influence of marijuana for at least three visits. Overall, the record contains both positive and negative notes regarding respondent's parenting abilities, and it is therefore debatable whether she "largely had successful parental visits" as she contends.

More important than the quality of the visits, in the trial court's view, was that respondent attended only 55% of the possible parenting visits. Gibson testified that respondent would offer the following explanations for missing visits: "Some of them were I forgot. I just woke up. I was at work. My phone is acting up. Then, I don't have a phone." The poor visitation history, as well as respondent's failure to appear for the termination hearing, supported the trial court's best-interest determinations.

There was also testimony that the lack of consistent visits affected respondent's parental bond with JSA, the eldest, and also prevented the formation of a strong bond with the younger children. JSA was bonded to her mother but would become upset when she did not show for a visit, and Gibson believed that the bond between respondent and JSA had deteriorated because JSA acts "really numb coming to the visits." The other three children, who were all less than three years old when the court assumed jurisdiction over them, did not appear to have a strong bond with respondent. One child was indifferent to the visits, and on one occasion a different child "backed up" and grabbed the foster parent when respondent arrived for a visit. The youngest child

---

[5] We review "for clear error . . . whether termination is contrary to the child's best interests." *In re Utrera*, 281 Mich App at 15. A finding is clearly erroneous if this Court "is left with the definite and firm conviction that a mistake has been made." *In re Williams*, 286 Mich App 253, 271; 779 NW2d 286 (2009) (quotation marks and citations omitted).

was removed from respondent when he was a month old and had spent the vast majority of his life in the care of his foster-care parents.

Respondent repeats her argument that DHHS failed to offer her adequate services, and that she should have been given an opportunity to participate in a more extensive treatment plan. But for the reasons discussed, the trial court did not clearly err by finding that DHHS made reasonable efforts to reunify the family. Further, there is no basis in the record to conclude that respondent would meaningfully participate in and benefit from additional services.

Respondent's overall argument seems to concede that she was not a model parent, but maintains that she made efforts to comply with the case service plan and that termination was not warranted when there was no evidence of "explicit parental unfitness." This overlooks that this case arose out of suspicions of physical abuse and a subsequent wellbeing check found the children staying in a home with deplorable conditions. And as discussed, respondent made no progress on the case service plans aimed at helping her rectify these conditions. Considering respondent's failure to obtain suitable housing, the number of missed parenting visits and the corresponding effect on the parent-child bond, it cannot be said that the trial court's best-interest determinations were clearly erroneous.

Affirmed.

/s/ Jane E. Markey
/s/ Douglas B. Shapiro
/s/ Sima G. Patel